# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL DUNHAM, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 09-cv-366-JPG-PMF |
| BOB HERTZ, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is a motion for summary judgment filed by defendants Joseph Gulash, Maynard Hill, and Michael Hare (Doc. No.48). The motion is opposed (Doc. Nos. 49-53). A reply is on file (Doc. No. 59).

Plaintiff Michael Dunham is proceeding under 42 U.S.C. § 1983. He asserts First and Fourteenth Amendment claims pertaining to the conditions experienced while he was a pretrial detainee at the Madison County Jail in 1997:

Count 1 – defendant Hare exposed him to conditions causing physical harm and mental anguish in September, October, and November

Count 2 – defendant Hill exposed him to conditions presenting a risk of infection/disease in November

Count 3 – defendant Gulash exposed him to conditions posing a substantial risk of harm in November

Count 4 – defendant Hare failed to protect him from attacks by hostile inmates

Count 5 – defendant Hill failed to protect him from an attack by hostile inmates in November

Count 6 – defendant Gulash failed to protect him from attacks by hostile inmates

Count 7 – defendant Hare retaliated for his protected speech

Count 8 – defendant Hill retaliated for his protected speech

Count 9 – defendants Hare, Hill and Gulash failed to provide medical treatment

## I. Summary Judgment Standard

Summary judgment will be entered if the defendants show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment request, the Court views the facts and draws all reasonable inferences in favor of the nonmoving party. *Ault v. Speicher,* 634 F.3d 942, 945 (7th Cir. 2011).

## II. Evidence Considered

Dunham relies, in part on the affidavit of his attorney, Peter Corsale. While Mr. Corsale is acquainted with information that may qualify as admissible evidence, he lacks personal knowledge of events supporting Dunham's § 1983 claims. Accordingly, Mr. Corsale's affidavit has not been considered as evidence. Fed. R. Civ. P. 56(c)(4). Mr. Corsale's remarks about the evidence have been considered as argument.

Several items were submitted with the defendants' reply. Because sur-reply briefs are not allowed, Dunham did not have a fair opportunity to address that information. SDIL-LR 7.1(c). Items submitted for the first time with the reply brief have not been considered.

## III. Discovery Disputes

In his response, plaintiff suggests that the defense motion is premature because of ongoing discovery and disputes regarding the sufficiency of discovery responses. Recently, plaintiff's second motion to compel discovery was denied (Doc. No. 61). The period for discovery closed on

July 31, 2011 (Doc. No. 29). Dunham received a full opportunity to gather and exchange information before his brief in response to the motion was due. In these particular circumstances, the defense motion is not premature.

**IV.     Deliberate Indifference**

In order to succeed on Counts 1- 6, Dunham must establish that the conduct of the defendants deprived him of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. *Larsen v. Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997). The defendants suggest that evidence supporting these claims does not satisfy the subjective component of the applicable legal standard. The parties agree that, while Dunham's claims arise under the Fourteenth Amendment (due to his status as a pretrial detainee), the legal standard supplied by the Fourteenth Amendment is practically identical to the legal standard supplied by the Eighth Amendment. Hence, Eighth Amendment jurisprudence is considered as controlling law. *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000).

The Eighth Amendment has objective and subjective elements of proof. The element challenged by the defense is the subjective element, which is met with evidence that the defendants acted or failed to act with a sufficiently culpable state of mind. The defendant must intentionally subject the plaintiff to a substantial risk of serious harm or act or fail to act with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference means that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and drew that inference. *Id*. at 847. In "failure to protect" cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.' *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir.

1991). In general, deliberate indifference may be inferred when a defendant is aware that plaintiff faced a substantial risk of injury and did nothing to guard against injury. If the evidence shows that the defendant took reasonable measures to avert a known risk, there is no liability, even when the measures prove to be unsuccessful. *Id.* at 844; *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997).

A. Counts 1 and 4

Considering first the claims against defendant Hare, the defense points to evidence that could rationally support a finding that Hare did not actually know that Dunham faced a substantial risk of harm. That is, the evidence will not show that Dunham notified jail officers that other detainees were hostile and threatened to inflict harm. Dunham maintains that he was not required to alert Hare to the risk because the risk of harm was created by Hare's own misconduct. The relevant facts, viewed in Dunham's favor, are summarized as follows.

Dunham met with law enforcement officers on July 16 and/or 17, 2007. As he was returning to his cell, defendant Hare said, in the presence of other detainees, "You don't want me to tell everybody you're a snitch" (Doc. No. 50-1, p. 6-7; Doc. No. 50-2, pp. 3-5). Hare used a loud voice, which could be overheard by other detainees. Between July 17 and September 1, 2007, detainees in Dunham's unit made remarks, giving Dunham the impression that Hare's comment made him a target for assault (Doc. No. 50-1, p. 9). On September 1, 2007, Dunham was physically assaulted multiple times by inmate Robert Orlando Sharp (Doc. No. 50-1, p. 13). Shortly before Sharp initiated the assaults, Sharp made a reference to Hare's snitch remark, commenting that "Hare knew what he was talking about" (Doc. No. 50-1, p. 8; Doc. No. 50-2, pp. 4, 7).

Following the September 1, 2007, assault, Dunham was moved to a different unit. The new cell assignment did not remedy Dunham's safety concerns, because Hare, once again, referred to

Dunham as a snitch in the presence of detainees in the new housing unit (Doc. No. 50-1, p. 12-13). On October 20, 2007, Dunham was physically assaulted by unknown detainees (Doc. No. 50-1, p. 14).

In December, 2007, Hare continued to refer to Dunham as a snitch (Doc. No. 51-1, p. 3-4). On December 17, 2007, Hare entered Dunham's cell to conduct a search. He slammed Dunham into the cell bars, using a great amount of force (Doc. No. 50-1, p. 18; 51-1, p. 3).

If found to be credible, the evidence outlined above could support a verdict in Dunham's favor on the subjective elements of Counts 1 and 4. While many of these facts are disputed, the version most favorable to Dunham must be considered here. A reasonable jury could conclude that Hare deliberately tagged Dunham as an informant who cooperated with law enforcement, knowing that his comments would be overheard and also knowing that the snitch label would make Dunham a target for physical assault by other detainees. In short, the conduct attributed to Hare is sufficiently culpable to support a verdict in Dunham's favor.

B. Counts 2 and 5

Defendant Hill argues that the evidence shows that he did not actually know that Dunham faced a risk of serious harm and was unaware that Dunham was assaulted by hostile inmates. In response, Dunham presents his version of the events occurring on November 26, 2007. At that time, Dunham was confined in a unit where all detainees were locked in cells. Hill came to the front of Dunham's cell and ordered him to pack his belongings because he was moving to a different cell block. Hill then read aloud a letter that Dunham had written. The letter expressed Dunham's concern about Hare's snitch comments, reported threatening comments by other detainees, and asked for a new cell assignment "away from these guys here" (Doc. No. 48-2 p. 9-10). After reading

the letter, Hill left Dunham in the unit for approximately 15 minutes. After Hill left, detainees confined in cells on either side of Dunham carried out the assault Dunham expected. They threw urine and feces through the bars of Dunham's cell. As they did so, the detainees referred to Dunham by names such as "snitch bitch" (Doc. No. 48-2, p. 11).

A reasonable jury could conclude that Hill's conduct of reading Dunham's letter aloud and then leaving the unit for a period of time, qualifies as deliberate indifference. The circumstances shown by this evidence could support an inference that Hill knew his voice would be overheard by other detainees and further, that Hill knew Dunham's written statements, once shared with those around him, would make Dunham a target for assault. Also, it can be inferred that Hill was aware that the hostile detainees would use the opportunity to carry out an assault when he left the cell block. In short, if Dunham's version of events is believed, the behavior attributed to defendant Hill is sufficiently culpable to satisfy the subjective element of Counts 2 and 5.

C. Counts 3 and 6

Turning to the claims against defendant Gulash, the evidence describes his response to written complaints from Dunham regarding jail conditions. Gulash suggests that he took reasonable steps to evaluate and respond to Dunham's concerns, while Dunham argues that "nothing was ever done" to protect him from hostile inmates (Doc. No. 49-1, p. 5). The evidence regarding Gulash's conduct is summarized as follows.

Dunham sent written correspondence to Gulash, the jail superintendent, in October and November, 2007 (Doc. No. 53-3, 53-4, 53-6, 53-7). In October, 2007, Gulash, reviewed some of Dunham's correspondence, including a letter describing Dunham's concerns regarding his safety from hostile inmates. Gulash arranged for an experienced jail officer (Gary Bost) to investigate the

situation and respond to Dunham's concerns. Gulash later reviewed a report authored by Bost and discussed the situation with Bost.

In November, 2007, Gulash reviewed another piece of correspondence from Dunham. He arranged for a different officer (Hollenbeck) to handle Dunham's concerns. At some point, he evaluated Hollenbeck's response (Hollenbeck arranged for Dunham to be promptly moved to a different unit) and found that response to be sufficient (Doc. No. 48-5, pp. 2-5; Doc. No. 52-2 p. 3-4, 7-8).

Plaintiff suggests that Gulash did not do enough to alleviate the risk of harm. Yet, the legal question is not whether Gulash was successful in his efforts to manage Dunham's safety concerns – or even whether Gulash devised an effective plan of action. The question is whether Gulash disregarded a known risk of harm or responded to a known risk with deliberate indifference. The facts, viewed in Dunham's favor, show that Gulash twice arranged for jail officers to investigate Dunham's concerns about the conditions of his confinement. He then evaluated the responses, which included a prompt reassignment to a different housing unit. Because these were reasonable steps, the evidence could not support a finding that Gulash reacted to a known risk of serious harm with a sufficiently culpable state of mind. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2008)(delegation of responsibility for investigating a complaint about prison conditions does not qualify as deliberate indifference). Gulash's position has merit. At the conclusion of this case, judgment should be entered in favor of defendant Gulash on Counts 3 and 6.

## V.     Retaliation

Defendants Hill and Hare argue that they are not liable under Counts 7 and 8 because they did not engage in retaliation. Dunham counters that his First Amendment activity was at least a motivating factor in these defendants' decisions to take action.

An act performed in retaliation for the exercise of a constitutionally protected right will subject the actor to liability even where the act, if taken for a different reason, would have been proper. *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978). To succeed on a claim of retaliation, Dunham must present facts showing that his constitutionally protected conduct was a motivating factor for the defendant's offensive behavior. *Greene v. Doruff*, 660 F.3d 975, (7th Cir. 2011); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Suspicious timing does not suffice. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)(six-day lapse between protected conduct and purported retaliatory conduct does not support an inference of retaliation).

Viewing the evidence in Dunham's favor, he can show that he sent correspondence to defendant Gulash in October and November, 2007. In the letter drafted on October 24, 2007, Dunham declared his intent to file a lawsuit (Doc. No. 53-3). That letter was handled by Mr. Hollenbeck, who interpreted it as a request for federal civil rights forms (Doc. No. 53-3, 53-12). Approximately one month after the letter was sent, defendant Hill read a different letter aloud, in the presence of other detainees. In December, 2007, defendant Hare continued behavior that began in July, referring to Dunham as a snitch. On December 17, 2007, approximately seven weeks after Dunham expressed his intent to file civil rights litigation, defendant Hare visited Dunham's cell and slammed Dunham into the cell bars, using a great amount of force.

As to Count 7against Hare, the chronology of events does not reasonably permit the inference that Dunham's protected speech was a factor motivating Hare's offensive conduct.

Count 8 against Hill presents a closer question. Hill's conduct of reading Dunham's correspondence reasonably permits an inference that Dunham's written complaint to Gulash (the one read aloud by Hill) was a factor motivating this conduct. While the letter read by Hill did not mention Dunham's intent to pursue civil rights litigation, it was a grievance, which enjoys First

Amendment protection. *See Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)(discussing the types of grievances that qualify as protected speech). The scenario is such that a reasonable jury might conclude that Hill's conduct was retaliatory.

At the conclusion of this case, judgment should be entered in favor of defendant Hare on Count 7.

## VI. Inadequate Medical Care

The defendants seek judgment in their favor on Count 9, on the basis that Dunham cannot demonstrate that they responded with deliberate indifference to a serious medical need. They point to evidence showing that Dunham did not seek medical care for injuries he suffered following an assault by unknown assailants on October 20, 2007.

In the medical care context, deliberate indifference means two things: actual knowledge of the serious medical need and inaction or woefully inadequate action. *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998). A detainee's medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997)).

Dunham argues that the injuries he suffered in October and November, 2007, were objectively serious. The focus here is the injury suffered in October, because Count 9 specifically refers to that injury (Doc. No. 38, pp. 15-16). Viewed in Dunham's favor, the evidence shows that he was physically assaulted by unknown inmates and lost consciousness for a period of time. When he recovered his senses, he found himself on the floor in a puddle of blood. He did not call for help and did not seek medical care by filling out a sick call slip. When he had an opportunity to speak with a jail guard, the guard inquired about his injury. Dunham did not report an assault. Rather, he

informed the jail guard that he did not want to talk about it (Doc. No. 48-2, pp. 6-7). Several days later, Dunham described the assault in correspondence sent to defendant Gulash. He did not describe the nature of his injury or seek access to medical care (Doc. No.53-3, p. 1-2).

This evidence is insufficient to create an issue for trial on Count 9. The materials could not reasonably support an inference that these defendants knew that Dunham had a serious need for medical treatment and refused to provide access to medical care.

## VII. Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 48) be GRANTED in part and DENIED in part. At the close of this case, judgment should enter in favor of defendant Gulash on Counts 3, 6, and 9. Judgment should be entered in favor of defendant Hare on Counts 7 and 9, and judgment should be entered in favor of defendant Hill on Count 9. If these recommendations are adopted, Counts 1, 2, 4, 5, and 8 will remain for trial.

**SUBMITTED:** __February 1, 2012__ .

    __S/Philip M. Frazier__
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**